804 F.Supp. 1129 (1992)
BIB MANUFACTURING CO., Plaintiff,
v.
DOVER MANUFACTURING CO. and Roger A. Draft, Defendants.
No. N 91-0074 C.
United States District Court, E.D. Missouri, N.D.
October 9, 1992.
*1130 *1131 Lionel Lucchesi, Polster, Polster & Lucchesi, St. Louis, Mo., Robert Clayton, II, Clayton & Rhodes, Hannibal, Mo., for plaintiff.
John D. Hussman, Mark T. Keaney, Lewis, Rice & Fingersh, St. Louis, Mo., for defendant Draft.

MEMORANDUM
GUNN, District Judge.
This matter is before the Court on several motions.
Plaintiff BIB Manufacturing Company brings this action against Dover Manufacturing Company and Roger A. Draft. In BIB's first count it seeks a declaration that it has not infringed defendants' patents. The remainder of the complaint consists of one count alleging violation of the Lanham Trade-Mark Act, 15 U.S.C. §§ 1051-1127, and another asserting tortious interference with a business relationship.
Draft, an individual residing in Michigan, has exclusively licensed two of his patents to Dover, a Delaware corporation principally located in New York. The licensing agreement authorizes Dover to make, in accordance with the patents-in-suit, overflow shut-off valves for underground fuel storage tanks and pay Draft a royalty from the sale of these valves. The licensing agreement also provides that Draft shall have the first right to initiate litigation for patent infringement. Upon notice from Draft that he does not intend to pursue such litigation, Dover may then assume litigation responsibility. BIB, a Missouri corporation having its regular place of business in Hannibal, Missouri, also manufactures overflow shut-off valves.
*1132 On April 26, 1991, attorney Richard C. Cooper of Price, Heneveld, Cooper, DeWitt & Litton wrote a letter to BIB in Missouri demanding that it cease and desist infringement of both patents. Cooper sent a copy of this letter to one of BIB's customers located in California. The letter does not explicitly state who Cooper represented. In fact, BIB's customer assumed that Cooper represented Dover and stated so in a letter to BIB inquiring about Cooper's allegations. Another letter from Cooper to BIB's attorney, dated June 13, 1991, expressed Cooper's concerns that the "making, using or selling of the infringing product will certainly be considered willful and in blatant disregard of the rights of Mr. Draft and OPW Division of Dover Corporation and will be treated accordingly." Both Draft and Dover were copied on this letter. Eventually BIB and Cooper entered into settlement discussions that ultimately failed. This suit commenced, followed promptly by Draft filing suit against BIB in the United States District Court for the Western District of Michigan. Draft and Dover both maintain that during all of these activities Cooper solely represented Draft. Beyond his involvement in these activities, Draft has no other contacts with Missouri.
In passing on a motion to dismiss for lack of jurisdiction over a non-resident, a federal court with jurisdiction based on diversity is required to engage in a two-step inquiry. The Court must determine whether defendant committed one of the acts enumerated in the state long-arm statute and whether the exercise of personal jurisdiction over defendant comports with the Due Process Clause of the Fourteenth Amendment. Land-O-Nod Co. v. Bassett Furniture Indus., Inc., 708 F.2d 1338 (8th Cir.1983).
Plaintiff, the party seeking to invoke federal jurisdiction, has the burden of establishing that jurisdiction exists, and this burden may not be shifted to the challenging party. Mountaire Feeds, Inc. v. Agro Impex, S.A., 677 F.2d 651, 653 n. 3 (8th Cir.1982). While the facts are viewed in the light most favorable to the plaintiff, "there must nonetheless be some evidence upon which a prima facie showing of jurisdiction may be found to exist." Aaron Ferer & Sons Co. v. Diversified Metals Corp., 564 F.2d 1211, 1215 (8th Cir.1977) (citations omitted).
The Due Process Clause of the Fourteenth Amendment places limits upon the power of a court to exercise personal jurisdiction over a non-resident defendant by requiring the defendant to have certain minimum contacts with the forum state so that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); Land-O-Nod, 708 F.2d at 1340. "In judging minimum contacts, a court properly focuses on `the relationship among the defendant, the forum, and the litigation.'" Calder v. Jones, 465 U.S. 783, 788, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804 (1984) (citations omitted). The defendant's contacts with the forum state must be purposeful and such that defendant "should reasonably anticipate being haled into court there." World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). In this circuit, the due process standard has devolved into a consideration of five factors:
(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.
Aaron Ferer & Sons, 564 F.2d 1211, 1215.
BIB premises this Court's personal jurisdiction over Draft on Cooper's communications with BIB or a BIB attorney as well as Dover's Missouri sales of products exploiting Draft's patents. As to BIB's first count under the Declaratory Judgment Act, 28 U.S.C. § 2201-2202, the Court concludes that this circuit's five-step inquiry yields the same outcome as that reached by the many courts which conclude that subjecting a defendant to the foreign jurisdiction *1133 of an alleged infringer simply on the basis of written notice of infringement would offend "traditional notions of substantial justice and fair play."[1]Cascade Corp. v. Hiab-Foco AB, 619 F.2d 36 (9th Cir.1980); KVH Indus., Inc. v. Moore, 789 F.Supp. 69 (D.R.I.1992); Medeco Security Locks, Inc. v. Fichet-Bauche, 568 F.Supp. 405, 408 (D.Va.1983); Harley-Davidson Motor Co. v. Strada, 78 F.R.D. 521, 524-25 (E.D.Wisc.1978); Conwed Corp. v. Nortene, S.A., 404 F.Supp. 497, 504-06 (D.Minn.1975). Draft's contacts with Missouri are minimal, were conducted through the mails and via facsimile communications and not through the personal presence of his attorney or himself, and although these communications gave rise to this request for declaratory relief, they have no bearing on the underlying question whether Draft's patents have been infringed. Moreover, the patent laws countenance the sending of written notice of infringement prior to litigation and thus should not subject a patent-holder to jurisdiction in a foreign forum. The cease-and-desist letters as well as the resulting settlement efforts standing on their own will not suffice to confer this Court with personal jurisdiction over Draft.
Plaintiff also relies, principally in connection with Counts II and III, on a cease-and-desist letter sent to BIB's customer in California. The Eighth Circuit, however, reasons that the "interference with renewal contracts outside the state of [Missouri] causing damages to plaintiff in [Missouri]" will not sustain the Court's personal jurisdiction over defendant. Keystone Publishers Serv., Inc. v. Ross, 747 F.2d 1233, 1234 (8th Cir.1984).
Lastly, BIB seeks to impute Dover's sales activities in Missouri to Draft. BIB cites no apposite authority for its argument that a licensing agreement between two non-resident defendants establishes the basis for long-arm jurisdiction over a defendant with only de minimis contacts with the jurisdiction. See Aluminum Housewares Co. v. Chip Clip Corp., 609 F.Supp. 358, 362 (E.D.Mo.1984) (rejecting similar argument when patentee had no contacts with forum state); S.S. Kresge Co. v. Kamei-Autokomfort, 363 F.Supp. 257, 261 (D.Minn.1973). See also Falkirk Mining Co. v. Japan Steel Works, Ltd., 906 F.2d 369, 376 (8th Cir.1990) (unilateral activity of party with business relationship with nonresident defendant will not suffice to confer personal jurisdiction over it). Thus, even if Draft's activities satisfied the Missouri long-arm statute, the Court concludes that the exercise of personal jurisdiction over Draft, considering his limited Missouri contacts, would not comport with due process. The Court will grant Draft's motion to dismiss for lack of personal jurisdiction.
Also before the Court is Dover's motion to dismiss and/or for summary judgment. As to BIB's claim for declaratory relief, Dover maintains that no "case or controversy" exists to support summary judgment under the Declaratory Judgment Act because Dover has never threatened BIB with patent infringement. An actual controversy exists where there is some threat of suit, either an express or implied accusation of patent infringement which creates a real and reasonable fear in the plaintiff that it will be subjected to suit in the near future, and plaintiff possesses the immediate intention and ability to produce a purportedly infringing article. Aluminum Housewares Co., 609 F.Supp. at 362. In this instance, the parties concede that BIB not only possesses the ability to produce such a product but that it currently does. The disagreement arises over the reasonableness of BIB's fear that Dover would assert a claim of patent infringement. BIB asserts that even if Dover did not authorize Cooper's conduct that it believed that Cooper represented both Draft and Dover, thus making him Dover's apparent agent with the apparent authority to threaten patent infringement litigation. The Court concurs with BIB that Cooper's communications did not clearly indicate *1134 who he represented. Dover became aware of Draft's activities by Cooper's letter of June 13, 1991 if not earlier. Thus, by Dover's inaction, it allowed the impression to persist that Cooper represented both Draft and Dover. See Ottawa Charter Bus. Serv., Inc. v. Mollet, 790 S.W.2d 480 (Mo.Ct.App.1990) (principal must create appearance of agency). Moreover, even if the Court were not to conclude that Cooper acted as Dover's apparent agent, the information available to BIB certainly created a reasonable apprehension that either Draft or Dover, whose patent rights were allegedly infringed, might bring an infringement action.
The terms of the licensing agreement do not impact this decision. Although Draft has the first right to sue, Dover might step in at any time if Draft chose to suspend his efforts. The Court concludes that it has jurisdiction to entertain this declaratory judgment action and does not find persuasive Dover's suggestion that this Court should decline to exercise its jurisdiction.
Dover also seeks summary judgment on the claims that it violated the Lanham Trade-Mark Act and tortiously interfered with BIB's business relationship. Under Rule 56 of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if he can "show that there is no genuine issue as to any material fact and that [he] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden of proof is on the moving party and a court should not grant summary judgment unless it is convinced that there is no evidence to sustain a recovery under any circumstances. Foster v. Johns-Manville Sales Corp., 787 F.2d 390, 392 (8th Cir. 1986). Under Rule 56(e), a party opposing a properly supported motion for summary judgment may not rest upon the allegations of his pleadings but must present affirmative evidence from which a jury might return a verdict in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).
As to Counts II and III, the parties do not dispute the law but vigorously argue the facts. A central point to this disagreement is whether or not BIB has adequately established damages. BIB asserts, in part, that it needs to conduct further discovery to determine the full extent of its damages. Accordingly, at this time, the Court will deny Dover's motion for summary judgment as to Counts II and III without prejudice to a subsequent motion after further opportunity for discovery. See Fed. R.Civ.P. 56(f).
The final matter before the Court is BIB's motion for release from a confidentiality agreement. The Court held a hearing on this motion at which time BIB could not cite any misrepresentation made by Dover in relation to the agreement at issue. The Court does not find any justification for releasing BIB from the agreement it freely entered into with Dover.
NOTES
[1] The Court notes that B & J Mfg. Co. v. Solar Indus., Inc., 483 F.2d 594 (8th Cir.1973), is distinguishable both because that decision focused on the interpretation of Minnesota's long-arm statute and because defendant had many more contacts with the forum than Draft has in this litigation.