SWEETHEART PLASTICS, INC.,
Plaintiff, Appellant,

v.

ILLINOIS TOOL WORKS, INC.,
Defendant, Appellee.

No. 7731.

United States Court of Appeals,
First Circuit.

Feb. 24, 1971.

Francis J. Larkin, Hopedale, Mass., with whom George L. Greenfield and Wolf, Greenfield, Hieken & Sacks, Boston, Mass., were on brief, for appellant.

Granger Cook, Jr., Chicago, Ill., with whom John M. Hall, Choate, Hall & Stewart, Boston, Mass., James P. Hume, and Richard R. Trexler, Chicago, Ill., were on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

Sweetheart Plastics, Inc. (hereinafter Sweetheart), plaintiff and appellant, seeks a declaratory judgment, under 28 U.S.C. §§ 2201, 2202, that certain plastic containers, which it manufactures, do not infringe patents Nos. 3,139,213 and 3,091,360, owned by defendant and appellee, Illinois Tool Works, Inc. (hereinafter I.T.W.). Both the procedural and substantive issues involved require a discussion of the previous litigation in this case.

The patents concern plastic containers which, because of a nesting device, will not stick together when stacked one inside the other. I.T.W. has successfully charged in another suit that approximately eighty of Sweetheart's products, or about 25% of Sweetheart's total production during 1964–69 infringe these patents. Sweetheart appealed that judgment from the Northern District of Illinois (Chicago) to the Seventh Circuit which, since argument in this case, affirmed. Illinois Tool Works v. Sweetheart Plastics, Inc., 436 F.2d 1180 (7th Cir. 1971). I.T.W. has also brought similar suits in the same court against other major manufacturers of similar products.

During the course of the proceedings before the Chicago court, Sweetheart's counsel claim to have discovered some expired patents that appeared to embody a nesting device which might serve as a suitable substitute for the challenged products. Sweetheart developed sample containers, and made a token sale to one buyer of 100 cups based on one of the three designs. Sweetheart did not, however, retool its machinery or include the new containers in its regular product line.

The litigation then took on the nature of a revolving door, with Sweetheart first vainly trying to find out through interrogatories if I.T.W. claimed that six additional items, including the three at issue here, also infringed; the court later allowing all six to be included in the case; the court still later requiring Sweetheart to answer I.T.W.'s interrogatory as to the state of manufacture and sale of each of the six items; I.T.W. then moving to exclude the three items involved here; and the court finally ruling at a pretrial conference that these three items should be excluded from the litigation but that Sweetheart could at-

tempt to reinstate them during the trial. Sweetheart made no such attempt, and the containers were not mentioned in the Chicago court's opinion of September, 1969, or, despite Sweetheart's effort, in the final judgment.

After that judgment was entered, Sweetheart filed this action in the district court in Massachusetts seeking a declaration that the same three new containers did not infringe I.T.W.'s patents. In the Chicago court, I.T.W. attempted to enjoin Sweetheart from proceeding with the Massachusetts suit. That court held that it had no jurisdiction to enter the injunction. But it further said that it had already determined that the status of the new containers was not justiciable because they presented no case or controversy and that the proper remedy for Sweetheart was to appeal this determination.[1]

Having failed to stop this suit in the Chicago court, I.T.W. moved in the Massachusetts court to dismiss Sweetheart's complaint or, in the alternative, to transfer the case to the Northern District of Illinois. The district court granted I.T.W.'s motion to dismiss on the grounds that it lacked personal jurisdiction over the defendant, I.T.W., and that it lacked subject matter jurisdiction because there was no case or controversy as required by 28 U.S.C. § 2201 and the Constitution. From that decision, Sweetheart appeals to this court.

■ Pursuant to F.R.Civ.P. 4(d) (7), Sweetheart has attempted to invoke the Massachusetts long arm statute, Mass. Gen.L.Ann. ch. 223A, and has according-ly served I.T.W. by mail. This statute is new and the relevant section has yet to be construed by the Massachusetts Supreme Judicial Court. *Cf.* Kagan v. United Vacuum Appliance Co., 1970 Mass.A.S. 999, 260 N.E.2d 208. We are reluctant to initiate construction of a state statute, and we decline to do so here where alternative grounds make such a construction unnecessary.[2]

■ Both parties have stressed primarily the issue of subject matter jurisdiction. A declaratory judgment action is not justiciable if it does not present a case or controversy. The case must be appropriate for judicial determination and not hypothetical or abstract. Aetna Life Insurance Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 239–240, 57 S.Ct. 461, 81 L.Ed. 617 (1937).

■ I.T.W. claims that the Chicago court has already determined that no case or controversy exists with regard to the new containers and that its decision to exclude the containers from the trial has res judicata effect. Despite the Chicago court's subsequent interpretation of its decision, we do not feel bound to consider the matter as res judicata. The doctrine is an equitable one, *see* 1B J. Moore, Federal Practice ¶ 0.405 [12], at 787 (2d ed. 1965); and, where it is not clear from the series of rulings in the Chicago suit that the court excluded the new containers from the suit because the issue was not justiciable, an appealable ruling, or because the court exercised its discretion to narrow the issues in the case, we would find it inequitable to give res judicata effect to the Chicago court's decision.[3]

---

1. Sweetheart did not challenge this determination in its appeal to the Seventh Circuit.

2. We note in passing that I.T.W. has attempted unsuccessfully to contest jurisdiction under another state's long arm statute in another action for declaratory judgment between the same two parties. Sweetheart Plastics, Inc. v. Illinois Tool Works, Inc., 267 F.Supp. 938 (S.D.N.Y. 1967). While long arm statutes are generally not written with declaratory judgment actions in mind, we would not wish to be understood as impliedly saying that jurisdiction by means of such statutes may not be obtained in declaratory judgment actions.

3. We intend no criticism of the Chicago court. Apparently, as our text indicates, both parties presented the court with the facts and arguments concerning the new containers in a piecemeal fashion which caused the court to alter, on several occasions, its opinion as to the relevance to the new containers.

■ We reach, therefore, the merits of the justiciability issue. The distinction between those declaratory judgment actions which present a case or controversy and those which are hypothetical is "necessarily one of degree." Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941); see also 6A J. Moore, Federal Practice ¶ 57.20, at 3117 (2d ed. 1966). The courts have held that a charge of infringement is a prerequisite to a finding of justiciability, but the charge required is liberally construed.[4] In Dewey & Almy Chemical Co. v. American Anode, Inc., 137 F.2d 68 (3rd Cir. 1943), cert. denied 320 U.S. 761, 64 S.Ct. 70, 88 L.Ed. 454 (1943), the court found the prerequisite satisfied even though defendant had never specifically charged plaintiff with infringement, had no knowledge that plaintiff even utilized the disputed processes, but had used the patents as an economic weapon against other alleged infringers who declined to get a license and had asserted claims for the breadth of its patents that would seem to cover plaintiff's processes. See also Helene Curtis Industries, Inc. v. Sales Affiliates, Inc., 105 F.Supp. 886, 897–899 (S.D.N.Y.1952). A more recent decision interpreted the charge of infringement requirement as a:

"well grounded fear that should he [the plaintiff] continue or commence the activity in question, he faces an infringement suit or the damaging threat of one to himself and his customers. The touchstone is a *reasonable apprehension.*" Japan Gas Lighter Association v. Ronson Corp., 257 F.Supp. 219, 237 (D.N.J.1966) (emphasis in original). See also our decision in Hawley Products Co. v. United States Trunk Co., 259 F.2d 69 (1st Cir. 1958).

In this case the defendant, I.T.W., had indicated its willingness to bring infringement actions by doing so against almost every major non-licensed company in the field. Second, in a memorandum submitted to the Chicago court, I.T.W. state, "Plaintiff [I.T.W.] has yet to charge these items as being infringements, primarily because plaintiff has not 'felt' the effect of the manufacture of these items." This statement is somewhat ambiguous, but it might well lead Sweetheart to believe that it would be charged with infringement as soon as it began to produce the new containers in large quantities. Furthermore, in connection with the settlement negotiations in the Chicago case, I.T.W.'s president had written a letter to Sweetheart's president suggesting that the new containers would indeed infringe I.T.W.'s patents.[5] We think that Sweetheart has shown—but barely—that it would probably face an infringement suit if it began to produce the new containers in large quantities.

■ In addition to the charge-of-infringement prerequisite, there is a second requirement which plaintiffs who seek a declaratory judgment of non-infringement must meet. The plaintiff must have actually produced or have

---

4. Some authorities would require no charge. "But we believe that a 'charge' of infringement is not an inflexible prerequisite to the maintenance of an action for a declaration of non-infringement or invalidity * * * [W]here the patent by its terms raises a reasonable doubt as to whether or not plaintiff's activities constitute an infringement, then there is a 'controversy'. There is hence no constitutional objection to the maintenance of the action. To deny that a 'case or controversy' is present is to ignore the realities of business life." 6A J. Moore, Federal Practice ¶ 57.20, at 3120–21 (2d ed. 1966).

5. I.T.W. suggests that this letter should be excluded from evidence because it concerned a proposed settlement, but the rule excluding statements made in the course of an attempted compromise applies only when the statement is offered "to establish an admission or conduct indicative of a consciousness of a weak cause * * *" 4 Wigmore on Evidence § 1061 (Supplement at 25) (3rd ed. 1964). Sweetheart does not offer the letter for that purpose. Whatever the business ethics of using this confidential letter as evidence, the letter is admissible.

made active preparation to produce the accused article. There is no justiciability if the plaintiff is merely considering the advisability of commencing production. 6A J. Moore, Federal Practice, ¶67.20, at 3118 (2d ed. 1966). Whether a plaintiff has the immediate intention and ability of entering into actual manufacture, use or sale of the article in question is by no means an easy question. One court has stated, "Major stress should be placed on the 'definite' intention of the plaintiff to take 'immediate' action to utilize its potential and this intention should be 'evident' from the preparatory steps outlined in the complaint." Wembley, Inc. v. Superba Cravats, Inc., 315 F.2d 87, 90 (2d Cir. 1963). See also Technical Tape Corp. v. Minnesota Mining & Mfg. Co., 200 F.2d 876, 878 (2d Cir. 1952); General Electric Co. v. Refrigeration Patents Corp., 65 F.Supp. 75 (W.D.N.Y. 1946). It is our conclusion that this requirement means that the plaintiff must allege preparations for production which suggests that, but for a finding that the product infringes or for extraordinary and unforeseen contingencies, the plaintiff would and could begin production immediately.[6]

■ As of the time of the dismissal of the complaint below, and of the argument on appeal, Sweetheart's professed intention was contingent. It claimed that the three containers were its "anchor to windward",[7] and that it intended to produce them if "a final judgment adverse to Sweetheart is ultimately entered in Chicago." Admittedly the Chicago suit has, short of a successful pursuit of certiorari, produced such a result at this point. But, if the evidence of a threatened infringement suit is barely sufficient for justiciability, we consider the evidence of definiteness of intention as objectively manifested by prior preparatory steps to fall somewhat short of bare sufficiency.

■ Quite apart from technical justiciability, we are also influenced by the circumstances of this litigation. The district court in Chicago and the Seventh Circuit Court of Appeals have already interpreted I.T.W.'s patents and decided what containers infringe them. Therefore, even if the status of the new containers were a justiciable issue, it would be more expedient to tap the acquired expertise of these two courts a second time rather than compelling another court to interpret the same patents with respect to similar containers. The Chicago district court has indicated its willingness to determine if the new containers constitute infringement "[a]fter the trial, if infringement is found and an injunction is issued." Those results have now come to pass. The contingency against which Sweetheart has been holding in reserve its plans for production of the three containers has occurred. No reason appears why significantly more delay would be encountered in initiating a declaratory judgment suit in Chicago than in sending this case back to the Massachusetts district court.

■ These considerations of judicial expediency are relevant to jurisdictional decisions under the declaratory judgment statute. The Supreme Court has held that jurisdiction under the declaratory judgment statute is discretionary with the court and that the statute does not confer on the litigant an absolute right to be heard. Public Service Commission of Utah v. Wycoff Co., 344 U.S. 237, 241, 73 S.Ct. 236, 97 L.Ed. 291 (1952); see also 6A J. Moore, Federal Practice ¶57.20, at 3121 (2d ed. 1966). Lower courts have on several occasions refused to hear declaratory judgment actions if the same parties and issues are involved in another suit. E.g., American Greiner Electronic, Inc. v. Establissements Henry-Le Paute, S.A., 174 F.Supp. 918 (D.

---

6. In Hawley Products Co. v. United States Trunk Co., 259 F.2d 69 (1st Cir. 1958), a case emphasized by Sweetheart in its brief, the plaintiff was already producing and selling the item in question.

7. By which Sweetheart must mean "anchor to leeward."

D.C.1959); Crosley Corp. v. Westinghouse Electric & Manufacturing Co., 130 F.2d 474, 475 (3rd Cir. 1942), cert. denied 317 U.S. 681, 63 S.Ct. 202, 87 L.Ed. 546 (1942); F. X. Hooper Co., Inc. v. Samuel M. Langston Co., 56 F.Supp. 577, 584 (D.N.J.1944). Thus, the district court, even if it had determined that the issue was justiciable, might have been wise to have declined jurisdiction or to have transferred the case to the Northern District of Illinois.

Affirmed.