**PHC, INC., Plaintiff, Appellant,**

v.

**PIONEER HEALTHCARE, INC.,
et al., Defendants, Appellees.**

**No. 95–1525.**

United States Court of Appeals,
First Circuit.

Heard Nov. 7, 1995.

Decided Feb. 12, 1996.

---

granting a motion to dismiss, we draw our facts from the pleadings.

### I.

Plaintiff-appellant, PHC, Inc., is a Massachusetts corporation based in Peabody, Massachusetts, which operates alcohol and substance abuse centers across the country. Defendant-appellees are Pioneer Health Care, Inc. and its management affiliate Pioneer Management Systems, Inc. (collectively, "the Pioneer companies"); the former offers medical care services in and near the Pioneer Valley in western Massachusetts. The Pioneer companies are Massachusetts corporations based in West Springfield and their names are recorded with the Massachusetts state secretary under Mass.Gen.L. ch. 156B, § 11.

At some point it came to the attention of the Pioneer companies that PHC was using the name "Pioneer Healthcare" or "Pioneer Health Care" in its literature. On December 13, 1993, the Pioneer companies sent a letter to PHC which asserted that this use violated Massachusetts law and demanded that it stop. The letter also demanded that PHC cancel its earlier registration (as of February 16, 1993) of the mark PIONEER HEALTHCARE with the U.S. Patent and Trademark Office. A second letter to PHC threatened litigation.

PHC responded in a March 17, 1993, letter, declining to comply with any of the demands. The letter asserted that geographic and product differences meant that there was no confusion between the parties' respective uses of the disputed terms. It asserted equitable defenses to any infringement claim. And it said that the registration of the Pioneer companies' names with the Massachusetts authorities was irrelevant.

The Pioneer companies in turn filed a petition with the U.S. Patent and Trademark Office on May 25, 1994, claiming longstanding use of the marks PIONEER HEALTH CARE and PIONEER HEALTH and asking the office to cancel PHC's registration on grounds of confusion. 15 U.S.C. §§ 1052(d), 1064. The Pioneer companies' marks were not federally registered; but confusion be-

Michael Arthur Walsh with whom Lisa A. Richards and Choate, Hall & Stewart, Boston, MA, were on brief, for appellant.

Esther J. Horwich with whom Steven J. Brooks, Boston, MA, was on brief, for appellees.

BOUDIN, Circuit Judge, BOWNES, Senior Circuit Judge, and STAHL, Circuit Judge.

### BOUDIN, Circuit Judge.

This case presents familiar problems of federal jurisdiction, civil procedure, and the relationship between court and agency; but the problems arise in an unusual context: that of the unique and complex legal regime that governs trademarks and unfair competition. Since the appeal is from an order

tween a registered mark and an earlier unregistered "mark or trade name," *id.* § 1052(d), may lead to the cancellation of the registered mark. *Blanchard Importing & Distributing Co. v. Societe E. Blanchard et Fils,* 402 F.2d 797 (C.C.P.A.1968). An administrative proceeding began before the Trademark Trial and Appeal Board ("the Board"), a component of the Patent and Trademark Office.

On December 9, 1994, PHC responded by filing the present declaratory judgment action in the district court. In its first count, PHC sought a declaration that its own use of the mark it had registered—PIONEER HEALTHCARE—did not violate any rights of the Pioneer companies under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). The second count sought a preemptive declaratory judgment that PHC was entitled to maintain its registration of the mark at the Patent and Trademark Office.

After filing its district court action, PHC asked the Trademark Trial and Appeal Board to suspend its cancellation proceeding pending the outcome of the court action. The Board has a rule contemplating such suspensions where a court action may moot the matter before the agency. 37 C.F.R. § 2.117. The Board complied with PHC's request, and the administrative proceeding is now in abeyance.

Thereafter, the Pioneer companies moved in the district court for dismissal of the declaratory judgment action, urging *inter alia* that the district court lacked subject matter jurisdiction and that the action itself was "an improper attempt to circumvent the administrative process." In a detailed opinion dated April 12, 1995, the district court granted the motion, relying upon both of the grounds urged and its own discretion not to "take this case from the . . . administrative scheme designed to hear it."

## II.

The district court's first ground for dismissing PHC's complaint was jurisdictional and bore directly on count I of the complaint. The district court construed the letters from the Pioneer companies to PHC as threatening a suit under Massachusetts state law to protect their corporate names; the court said that these letters "cannot be construed as federal charges of infringement. Pioneer [the Pioneer companies] does not own a federally registered mark which would enable them to bring a federal infringement action."

Taking this view of the matter, the district court then invoked the settled rule that where a plaintiff asks a federal court for a declaration that it is *not* liable on a state claim, there is ordinarily no federal question jurisdiction. *Public Serv. Comm'n of Utah v. Wycoff Co.,* 344 U.S. 237, 248, 73 S.Ct. 236, 242, 97 L.Ed. 291 (1952). This is generally true even if it is assumed that a federal defense might have been offered to defeat the state claim. *Id.; see also Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 672, 70 S.Ct. 876, 879, 94 L.Ed. 1194 (1950).

On appeal, PHC responds that what it sought in the district court was a declaration that it was not liable on an anticipated *federal* claim against it, namely, a potential claim by the Pioneer companies that PHC's conduct violated section 43(a) of the Lanham Act, a provision explicitly referenced in count I of PHC's complaint. Section 43(a) creates a federal civil cause of action for any one damaged *inter alia* by another's use in commerce of any word, term, or name that

> is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

This "false designation of origin" claim under section 43(a) is a close cousin to a claim for infringement of a federally registered mark authorized by section 32 of the Lanham Act, 15 U.S.C. § 1114. An infringement claim under section 32 requires that the mark be a federally registered trademark. *Id.* But a section 43(a) claim, which PHC purported to anticipate, does not require that the mark or name be federally registered, *Quabaug Rubber Co. v. Fabiano Shoe Co.,* 567 F.2d 154, 160 (1st Cir.1977), and is commonly used to prevent infringement of unregistered trademarks. 3 J. Thomas McCar-

thy, *McCarthy on Trademarks and Unfair Competition* § 27.03 (3d ed. 1992). A claim under section 43(a) is a federal cause of action, automatically invoking federal question jurisdiction. 28 U.S.C. § 1331. *See also* 15 U.S.C. § 1121(a).

 The more difficult question is whether PHC could reasonably have anticipated a claim against it under section 43(a) of the Lanham Act and therefore brought a declaratory judgment to forestall it. Whether or not conceived of as "jurisdictional," such reasonable anticipation is a settled requirement in a federal declaratory judgment action of this character. *E.g., Sweetheart Plastics, Inc. v. Illinois Tool Works, Inc.,* 439 F.2d 871, 873 (1st Cir.1971). A federal court will not start up the machinery of adjudication to repel an entirely speculative threat.

If one looked solely at the letters sent by the Pioneer companies, one might be genuinely puzzled whether those letters threatened only a suit under Massachusetts law for the misuse of a corporate name or whether they implied as well an intent to resort to the Lanham Act. The only statute mentioned in the letters was "Massachusetts General Laws" and the mention was in the context of referring to PHC's use of a corporate "name." The letters did request cancellation of PHC's federal trademark, but they made no specific reference to a suit for infringement or under section 43(a).

On the other hand, the conduct of PHC, as described by the Pioneer companies' letters, could easily amount to a violation of section 43(a); the second letter alleged that PHC's alleged use was "misleading, confusing, and will result in irreparable harm"—language typical of a claim under section 43(a). The first letter threatened to seek recovery of damages, as well as an injunction. Damages are a standard remedy under section 43(a), 15 U.S.C. § 1117; the Massachusetts statute protecting corporate names provides only for administrative and injunctive relief. Mass. Gen.L. ch. 156B, § 11.

In all events, the question under the case law on declaratory judgments is not whether the Pioneer companies made a specific threat to bring a section 43(a) claim or even had such a claim in mind. The federal declarato-ry judgment statute aims at resolving potential disputes, often commercial in character, that can reasonably be feared by a potential target in light of the other side's conduct. *Cardinal Chem. Co. v. Morton Int'l, Inc.,* 508 U.S. 83, 94–97, 113 S.Ct. 1967, 1974–75, 124 L.Ed.2d 1 (1993). No competent lawyer advising PHC could fail to tell it that, based on the threatening letters and the surrounding circumstances, a section 43(a) suit was a likely outcome.

Quite likely PHC had tactical advantages in mind in bringing the declaratory judgment action. But, absent a showing of bad faith so substantial as to foreclose equitable relief, its subjective aims do not matter. The question is whether the Pioneer companies' letters made a section 43(a) claim against PHC a reasonable prospect. Although the district court did not pass explicitly upon this question, an affirmative answer is so clear to us that there is no reason to remand on this issue. Thus, the district court had federal subject-matter jurisdiction as to count I.

 Federal subject matter jurisdiction over count II is equally plain. In count II, PHC asked the court to declare that its federally registered mark was valid; this is a matter governed entirely by federal law and plainly within the federal question jurisdiction of a district court. Additionally, section 37 of the Lanham Act, 15 U.S.C. § 1119, cited in count II, empowers the federal courts to "determine the right to registration [and] order the cancellation of registrations" in civil cases in which a registered mark is at issue, and provides that such determinations shall control the Patent and Trademark Office.

### III.

Although federal subject matter jurisdiction is secure as to both count I and count II, a judge might well wonder whether it ought to be exercised in the teeth of an administrative proceeding pending before the Board. PHC's claim under count II sought a declaration that PHC's federal mark was valid; that was the very subject of the cancellation proceeding. As for count I, issues of confusion, likely to be addressed in the Board proceed-

ing, might easily have been pertinent, perhaps even controlling.

Problems of coordination and priority between court and agency are usually discussed under the rubric of primary jurisdiction. *E.g., Massachusetts v. Blackstone Valley Elec. Co.*, 67 F.3d 981, 992 (1st Cir.1995). The district court did not use this phrase, but it did rely upon two cases from the Seventh Circuit that dismissed as premature declaratory judgment suits brought solely to affirm federal registration of trademarks; in each case proceedings were still pending before the Board.[1] The district court also noted that it saw no reason "to take this case" from "an administrative scheme designed to hear it."

■ The *primary jurisdiction rubric is less* an organized doctrine than a set of precedents that guide courts in deciding when an issue should be resolved in the first instance by an agency that has special competence to address it. *United States v. Western Pacific R.R. Co.*, 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). The expertise of the agency, avoidance of conflict, indications of legislative intent, and other factors may permit, sometimes even require, such deference by court to agency. Pierce, Shapiro & Verkuil, *Administrative Law and Process* § 5.8 (2d ed. 1992). Although the agency's own decision may be subject to judicial review, such review is customarily of a limited kind.

■ Two factors weigh heavily against deference to the administrative proceeding here. First, the Board is not an ordinary administrative agency whose findings control unless set aside after court review under a highly deferential standard. Under the Lanham Act, where a contested Board proceeding has already addressed the validity of the mark, the Board's findings can be challenged in a civil action in district court through new evidence, and, at least to a large extent, the issues can be litigated afresh. 15 U.S.C.

§ 1071(b).[2] And Congress permits an initial proceeding in the district court to challenge or affirm a federal registered mark in civil suits in which a federally registered mark is in issue, even without any prior resort to the Board. 15 U.S.C. § 1119.

Second, at least where an infringement claim is involved—whether directly asserted by an "owner" or challenged in a declaratory action—there is often some urgency. Ongoing business conduct is likely to be involved and harm, possibly irreparable, may be accruing. Further, the Board cannot give relief for an infringement claim, either injunctive or by way of damages. Under these circumstances, awaiting the Board's action is less attractive; and this is doubly so because (as already noted) its administrative findings can so easily be relitigated in court.

Such reasons persuaded the Second Circuit in *Goya Foods, Inc. v. Tropicana Prod., Inc.*, 846 F.2d 848 (2d Cir.1988). There, a district court had dismissed a declaratory action brought to declare the plaintiff not liable for a possible trademark claim; the district court had relied on the fact that a proceeding to oppose the declaratory plaintiff's trademark application was pending before the Board in denying the plaintiff leave to proceed in court. Distinguishing ordinary primary jurisdiction cases, the Second Circuit ruled that the declaratory judgment on the infringement claim should proceed and should not await the Board's action.

We take the same view and conclude that the section 43(a) claim in the present case should not be deferred based on primary jurisdiction concerns. The Second Circuit did not decide whether, given that the infringement claim was to be heard by the district court at once, a companion declaratory claim addressed to the validity of a federally registered mark should *also* be heard despite the pendency of the Board proceed-

---

1. *Homemakers, Inc. v. Chicago Home for the Friendless*, 313 F.Supp. 1087 (N.D.Ill.1970), *aff'd*, 169 U.S. P.Q. 262, 1971 WL 16689 (7th Cir.,) *cert. denied*, 404 U.S. 831, 92 S.Ct. 70, 30 L.Ed.2d 60 (1971); *Merrick v. Sharp & Dohme*, 185 F.2d 713 (7th Cir.1950), *cert. denied*, 340 U.S. 954, 71 S.Ct. 573, 95 L.Ed. 687 (1951).

2. The law in this area is complicated, and perhaps confused; no simple generalization does it justice. *See* 3 Mccarthy, *supra*, § 21.05. For present purposes, it is enough that something close to *de novo* proceedings are often possible. *See Goya Foods, Inc. v. Tropicana Prod., Inc.*, 846 F.2d 848, 853 (2d Cir.1988).

ing. Our case does present that wrinkle, but we think that the answer is clear at least in principle: both claims should be heard if this course is more efficient; otherwise, not.

█ If no infringement claim were made in the district court but only a claim that a federal registration was or was not valid, a good argument might exist (absent unusual facts) for awaiting the completion of any pending Board proceeding addressed to the mark's validity. *See Goya*, 846 F.2d at 853. But where an infringement claim is also present and is going to be considered promptly by the court, it normally makes sense for the court to resolve a companion validity claim at the same time, *if* the issues underlying the two claims overlap to an extent that makes this course sensible.

It is hard to say in the abstract that such an overlap will always exist, but our own case is probably a good illustration. Seemingly, the section 43(a) claim may turn largely on whether there is confusion between the registered PHC mark and the unregistered marks that the Pioneer companies use to describe their services; and it appears likely that this is also a central issue, perhaps the only issue, in determining the validity of PHC's federal registration. Put differently, if deciding count I requires the district court to resolve much or all of the substance of count II, it would waste everyone's time not to settle the registration issue now.

We are not in a position to make a final judgment whether in this case count II should be litigated at this time, stayed, or dismissed. Neither the parties nor the district court has sought to analyze in detail the relationship between the issues underlying the two counts in the factual context of this case; our conjecture, pointing toward immediate consideration of count II, is plausible but it may or may not be warranted here. The district court is free to make its own initial judgment.

## CONCLUSION

We conclude that the district court erred in dismissing the complaint. There is nothing in the record or arguments before us that makes it appropriate for the district court to

dismiss or defer consideration of count I. As to count II, the district court does have authority to decide count II and, in our view, that would be the appropriate course if deciding count I effectively entailed deciding many or all of the issues underlying count II.

The judgment of dismissal is *vacated* and the case *remanded* for proceedings consistent with this opinion.